# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|   |   |
|---|---|
| **DAVETTE BUTLER,** | ) |
| Plaintiff, | ) |
| v. | ) Case No. 16-cv-01033 (APM) |
| **DISTRICT OF COLUMBIA,** | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff Davette Butler brings this matter under the Individuals with Disabilities Act after a Hearing Officer declined to award her minor son, D.B., any compensatory education even though he had found that the District of Columbia Public Schools ("DCPS") denied him a "free appropriate public education," or "FAPE," for the vast majority of the 2014–2015 and 2015–2016 school years. Now before the court are the parties' cross-motions for summary judgment. Plaintiff asserts that the Hearing Officer should have ordered compensatory education and asks this court to make that award. Defendant District of Columbia concedes that an award of compensatory education is appropriate, but asks that the matter be remanded for the Hearing Officer to determine the appropriate compensatory education award, or alternatively, if this court decides to make an award itself, that it grant something less than Plaintiff requests. Accordingly, the only question presented is whether this court or the Hearing Officer should award compensatory education to Plaintiff.

For the reasons stated below, the court remands this matter to the Hearing Officer to determine an appropriate compensatory education award.

I.    BACKGROUND

D.B. has suffered from blindness and learning disabilities since birth. Admin. R., ECF No. 8 [hereinafter A.R.], at 44–55. In July 2014, DCPS developed an individualized education program ("IEP") for D.B. for the 2014–2015 school year, which designated his school placement as Woodrow Wilson High School. *Id.* at 92–93. D.B. started at Wilson in August, but his school year was cut short after he was allegedly sexually assaulted in a school bathroom on September 8, 2014. *Id.* at 94–95, 97–101, 108–09, 281–82, 285–87. Thereafter, he did not return to school. *Id.* at 97–101, 108–09, 113–14, 285, 293. Beginning in October 2014, Plaintiff requested a change in her son's school placement, but DCPS did not carry out the request until June 2015, when it placed D.B. at H.D. Woodson High School. *Id.* at 97, 113–14, 143. Citing her concern that Woodson could not provide D.B. the services that he needed, Plaintiff did not, however, enroll D.B. at Woodson, and he never attended school there. *Id.* at 113, 144, 190–91.

In December 2015, Plaintiff filed a due process complaint under the IDEA on behalf of D.B., and amended it in January 2016. *Id.* at 147–50, 189–93. Her complaint alleged that DCPS had denied her son a FAPE for the 2014–2015 and 2015–2016 school years. *Id.* at 190–91. Two months later, after holding an evidentiary hearing, a Hearing Officer agreed with Plaintiff, in part. He determined that DCPS had denied D.B. a FAPE by (1) failing to convene D.B.'s entire IEP team to review his school placement following the alleged assault in September 2014; and (2) failing to revise D.B.'s IEP for the 2015–2016 school year. *Id.* at 20–21. The Hearing Officer did not, however, award D.B. compensatory education. He explained that, although Plaintiff's expert had proposed a compensatory education award of 50–75 hours of tutoring, in addition to other services, for each month of educational services D.B. had missed since he stopped attending school, the evidence did not establish "what position [D.B.] would now

2

occupy if he had attended school after September 8, 2014 or the type and amount of services he would need to regain that position." *Id.* at 24–25, 401–03. The Hearing Officer proceeded to reject Plaintiff's expert's testimony as "speculative" and insufficient "to craft an appropriate, specific fact based, compensatory education remedy." *Id.* at 25–26. He denied the request for compensatory education "without prejudice." *Id.*

Plaintiff then filed this action, challenging the Hearing Officer's refusal to award compensatory education. Plaintiff asks the court to enter an award of compensatory education based on the expert testimony presented at the administrative hearing. *See* Pl.'s Mot. for Summ. J., ECF No. 9 [hereinafter Pl.'s Mot.], at 12–15. Alternatively, Plaintiff requests an order directing the District to develop an appropriate compensatory education plan or an order requiring the District to fund an independent compensatory education evaluation. *Id*. at 15–18. Defendant, for its part, asks the court to remand the matter so the Hearing Officer can conduct a fact-specific inquiry to determine the appropriate compensatory education award. Def.'s Cross-Mot. for Summ. J., ECF No. 10 [hereinafter Def.'s Mot.], at 19. Alternatively, if the court decides to award compensatory education, Defendant asks the court to reject Plaintiff's proposal, arguing that D.B. is not entitled to the amount Plaintiff requests. *Id*. at 19–20.

## II. LEGAL STANDARD

The IDEA mandates that States, including the District of Columbia, which receive federal educational assistance provide a "free appropriate public education" ("FAPE") to all children with disabilities between the ages of 3 and 21. 20 U.S.C. §§ 1400(d)(1)(A), 1412(a)(1)(A). As part of the requirement to provide a FAPE, school districts must work with parents to develop an IEP for each child with a disability and then select a school placement to implement the IEP. *Id.* §§ 1412(a)(4), 1414(d)(1)(B), 1414(e). Under the IDEA, parents may challenge a school

3

district's decisions regarding educational services by filing a due process complaint and requesting an administrative due process hearing. *Id.* § 1415(b)(6), 1415(f). If a hearing officer concludes that the school district denied a student a FAPE, he has "broad discretion to fashion an appropriate remedy," which may include compensatory education. *See B.D. v. District of Columbia*, 817 F.3d 792, 800 (D.C. Cir. 2016). Compensatory education consists of prospective educational services designed to "compensate for a past deficient program." *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 522 (D.C. Cir. 2005) (internal quotation marks omitted). A final award relies on "individualized assessments," requires a "fact-specific" inquiry, and must be "reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place." *Id.* at 524.

The IDEA grants a parent dissatisfied with the outcome of a due process hearing the right to appeal to a federal district court. 20 U.S.C. § 1415(i)(2)(A). A reviewing court must consider the entire administrative record and, should either party request it, any additional evidence. *Id.* § 1415(i)(2)(C). The party challenging the hearing officer's ruling bears the burden of "persuading the court that the hearing officer was wrong." *Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1988). Using a preponderance-of-the-evidence standard, the court may "grant such relief as the court determines is appropriate," including an award of compensatory education. 20 U.S.C. § 1415(i)(2)(C); *B.D.*, 817 F.3d at 797–98.

That the reviewing court is required to base its decision "on the preponderance of the evidence" does not, however, authorize unfettered de novo review. *See Bd. of Educ. of Hendrick Hudson Central School Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 206 (1982) (internal quotation marks omitted). Instead, a court must give "due weight" to the hearing officer's

4

decision and may not "substitute [its] own notions of sound educational policy for those of the school authorities which [it] review[s]." *Id*. With that said, the fact that a court may hear additional evidence at a party's request, coupled with the preponderance-of-the-evidence standard, "plainly suggest[s]" that a hearing officer's determination receives less deference than is typical in administrative proceedings. *Kerkam*, 862 F.2d at 887. And, a decision "without reasoned and specific findings deserves little deference." *Kerkam v. Superintendent, D.C. Pub. Schs.*, 931 F.2d 84, 87 (D.C. Cir. 1991) (internal quotation marks omitted).

When, as here, neither party presents additional evidence to the district court, a motion for summary judgment operates as a motion for judgment based on the evidence in the record. *S.S. ex rel. Shank v. Howard Rd. Acad.*, 585 F. Supp. 2d 56, 64 (D.D.C. 2008). If the administrative record lacks "pertinent findings" and neither party enters additional evidence, then the "court may determine that the appropriate relief is a remand to the hearing officer for further proceedings." *Reid*, 401 F.3d at 526 (internal quotation marks omitted).

**III. DISCUSSION**

In this matter, the parties' sole disagreement is whether the court should enter a compensatory education award for D.B. (Plaintiff's position) or whether the matter should be remanded to the Hearing Officer to take additional evidence (Defendant's position). The court elects to do the latter.

The court begins by observing that the Hearing Officer in this case was wrong to deny, even without prejudice, Plaintiff's request for compensatory education. *See Lee v. District of Columbia*, No. 15-cv-01802, 2017 WL 44288, at *1 (D.D.C. Jan. 3, 2017). The purpose of compensatory education is to put the student in the position he would have been in absent the denial of FAPE. *B.D.*, 817 F.3d at 798. Once a plaintiff "has established that she is entitled to [a

compensatory education] award, simply refusing to grant one clashes with *Reid*, which sought to eliminate 'cookie-cutter' awards in favor of a 'qualitative focus on individual needs' of disabled students." *Stanton ex rel. K.T. v. District of Columbia*, 680 F. Supp. 2d 201, 207 (D.D.C. 2010) (quoting *Reid*, 401 F.3d at 524, 527). A hearing officer who finds that he needs more information to make such an individualized assessment has at least two options. He can allow the parties to submit additional evidence to enable him to craft an appropriate compensatory education award, *Stanton*, 680 F. Supp. 2d at 207, or he can order the assessments needed to make the compensatory education determination, *see B.D.*, 817 F.3d at 800. In the end, he must solicit the evidence necessary to determine the student's "specific educational deficits resulting from his loss of FAPE and the specific compensatory measures needed to best correct those deficits." *Reid*, 401 F.3d at 526. What he cannot do is what the hearing officer did here, that is, outright reject an award for compensatory services and terminate the proceedings. *See Stanton*, 680 F. Supp. 2d at 207.

Although this court could pick up where the Hearing Officer left off, the present state of the record makes such a course unwise. *See Reid*, 401 F.3d at 526 (stating that, where the administrative record lacks pertinent findings and the parties have not submitted additional evidence, a court may remand to the hearing officer for further proceedings). The only evidence presented at the administrative hearing regarding compensatory education came from Plaintiff's expert witness, Sharon Millis, an independent special education advocate who has worked with D.B. since he was seven years old. A.R. at 369–70. Millis proposed the following compensatory education plan to make up for the hours of instruction D.B. missed during the 2014–2015 and 2015–2016 school years: 1,175 hours of tutoring; 83 hours of adaptive physical education; 83 hours of occupational therapy; and 119 hours of orientation and mobility training. *Id*. at 401–

6

03.[1] To justify her recommendation, she explained, "[D.B.] regresses very quickly. And he hasn't been in school for 2 years and he needs a lot of work." *Id.* at 402. Millis confirmed, however, that there was no test showing that he regressed. *Id.* at 427–28. She stated, "No, there's nothing in the record. But I've known [D.B.] since he was 7 and I know how he learns and I know what happened." *Id.* at 427.

Standing alone, Millis' testimony does not address the basic factors that must be considered in developing an appropriate compensatory education plan. For one, Millis' testimony does not define D.B.'s present cognitive or behavioral disabilities. She did not, for instance, articulate in what areas D.B. had regressed and to what degree. Nor did Millis testify about what position D.B. would have been in absent the FAPE denial. Obtaining such information was critical to developing an individualized compensatory education plan, particularly in a case where nearly 18 months had passed since D.B. last was in school and nearly two years had passed since D.B.'s last comprehensive set of assessments. A.R. at 7–11, 16. True, Millis did suggest a robust compensatory education program; however, without further evidence specific to D.B. to support her recommendation, Millis' proposal strikes the court as akin to "a mechanical award of services," which the D.C. Circuit has deemed inappropriate. *B.D.*, 817 F.3d at 799.

Accordingly, on remand, the Hearing Officer must invite Plaintiff to submit additional evidence and/or order the necessary assessments to help him to fashion an award of compensatory education. The Hearing Officer should be guided by the principle that, "[t]o fully

---

[1] Millis specifically recommended the following for each month of school D.B. missed during the 2014–2015 school year (11 months total, as D.B. requires an extended school year): 75 hours of tutoring from a tutor with expertise in teaching the blind, 5 hours of adaptive physical education, 5 hours of occupational therapy, and 7 hours of orientation and mobility training. For each month of school missed for the 2015–2016 school year, Millis recommended D.B. be offered 50 hours of tutoring, 4 hours of adaptive physical education, 4 hours of occupational therapy, and 6 hours of orientation and mobility training. A.R. at 401–03. Millis recommended fewer hours for the 2015–2016 school year because she anticipated that D.B. would receive "intensive intervention" so would not need quite as much for the instruction and services missed during the 2015–16 school year. *Id.* at 402–03.

compensate a student, the award must seek not only to undo the FAPE denial's affirmative harm, but also to compensate for lost progress that the student would have made." *Id.* at 798. That inquiry requires "figuring out both [(1)] what position a student would be in absent a FAPE denial and [(2)] how to get the student to that position." *Id.* at 799. To answer the latter question, the Hearing Officer will need to first ascertain the student's needs at the time of the award, for absent a baseline from which to proceed, developing a program to make the student whole will be elusive. Current assessments of the student can be a critical tool in answering these foundational questions. *See id.* at 800. The Hearing Officer shall order such assessments, as necessary, to aid his efforts.

The court denies Plaintiff's Motion for Summary Judgment, and grants the District's Cross-Motion for Summary Judgment, insofar as it asks this court to remand the matter for the Hearing Officer to conduct a fact-specific inquiry to determine the amount of compensatory education owed to D.B. Accordingly, the court remands this matter to the Office of Dispute Resolution in the District of Columbia's Office of the State Superintendent of Education for further proceedings consistent with this Memorandum Opinion. A separate Order accompanies this Memorandum Opinion.

Dated: August 14, 2017

Amit P. Mehta
United States District Judge